UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT** | **CASE NO. 6:22-CV-01127** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **UNITED STATES OF AMERICA ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## MEMORANDUM RULING

Before the court is a Motion to Dismiss [doc. 16] filed by the St. Martin Parish Government ("St. Martin Parish"), seeking to dismiss all claims in this matter under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or in the alternative, requesting a more definite statement under Rule 12(e). Plaintiff Lafayette Consolidated City-Parish Government ("LCG") opposes the motion. Doc. 22.

### I.
#### BACKGROUND

This suit arises from a flood mitigation project by LCG involving, among other things, reducing a spoil bank on the St. Martin Parish side of Vermilion Bayou to improve the flow of stormwater into and out of the Cypress Island Swamp and reduce flooding in Lafayette Parish. *See* doc. 8 (amended complaint), ¶¶ 3–19. LCG alleges that it began coordinating with St. Martin Parish on this project in 2020 but that St. Martin Parish opposed permitting by the U.S. Army Corps of Engineers ("Corps") and passed Ordinance 14-71, which requires a permit by the parish council for "[a]ny development which

includes the construction, alteration, or removal of any sort of levee or levee system," in order to block the project. St. Martin Par. Ord. 14-71 (No. 21-07-1327-OR, 7-6-2021).

Maintaining that Corps permitting was not required and that Ordinance 14-71 was unconstitutional, LCG executed the spoil bank project in February 2022. Doc. 8, ¶¶ 25, 30–31. The St. Martin Parish president allegedly responded with threats of litigation. *Id.* at ¶¶ 33–34. LCG then filed suit in the Fifteenth Judicial District Court, Lafayette Parish, Louisiana, against St. Martin Parish and the Corps, seeking a declaratory judgment on its compliance with all lawful regulations, rules, ordinances, and laws in the spoil bank project and that a Corps permit was not required. Doc. 1, att. 1. The United States, appearing on behalf of the Corps, removed the action to this court on the basis of federal question jurisdiction, 28 U.S.C. § 1331. Doc. 1. St. Martin Parish then filed its first Motion to Dismiss or, in the alternative, Motion for More Definite Statement [doc. 5], and in response LCG amended its complaint. Doc. 8. The first Motion to Dismiss was then denied as moot. Doc. 25.

In the amended complaint LCG refines its allegations and seeks a declaratory judgment that (1) it "has no liability to St. Martin Parish for any work associated with the spoil bank project," (2) Ordinance 14-71 is unconstitutional; (3) alternatively, LCG did not violate Ordinance 14-71; and (4) no Corps permit was required for the spoil bank project as executed in February 2022. Doc. 8, ¶¶ 35–39. St. Martin Parish again moves for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) or, in the alternative, a more definite statement under Rule 12(e). Doc. 16, att. 1. LCG opposes the motions in all respects. Doc. 22.

# II.
# LAW & APPLICATION

A. **Rule 12(b)(1) Motion**

1. **Legal Standard**

A motion filed under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction. Attacks on subject matter jurisdiction may be either facial (addressing the sufficiency of allegations in the complaint) or factual (challenging the accuracy of facts underpinning the claim of jurisdiction). *King v. U.S. Dep't of Veterans Affairs*, 728 F.3d 410, 428 (5th Cir. 2013). Where, as here, the attack is a facial one, the plaintiff's allegations are entitled to a presumption of truth. *Ass'n of Am. Physicians and Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 553 (5th Cir. 2010). However, a legal conclusion disguised as a factual allegation is entitled to no such presumption. *Machete Prods., LLC v. Page*, 809 F.3d 281, 287 (5th Cir. 2015).

Here the challenge to subject matter jurisdiction is based on a lack of ripeness, which originates in Article III's case or controversy language and is a required element of subject matter jurisdiction. *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012). "Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . ." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807 (2003) (cleaned up). The chief concerns are the fitness of the issues for decision and the hardship to the parties of withholding court consideration. *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2001). "A case is generally ripe if any remaining issues are purely legal ones;

conversely, a case is not ripe if further factual development is required." *Id.* (internal quotation omitted). Because the inquiry is often launched when a party seeks pre-enforcement review of a law or regulation, it presents a "unique challenge" in the declaratory judgment context. *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 544 (5th Cir. 2008); *Orix Credit Alliance, Inc. v Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000). Nonetheless, declaratory actions are still subject to the same ripeness requirements as other suits and the court must determine whether the facts alleged "are sufficiently immediate to establish an actual controversy[.]" *Orix Credit Alliance, Inc.*, 212 F.3d at 896.

### 2. Application

St. Martin Parish asserts that the claims against it are not yet ripe, because LCG's requested declaratory judgment of "no liability" depends on a premature adjudication of its potential tort liability for any future effects of the project in St. Martin Parish. It points to *United Transport Union*, supra, where the Fifth Circuit ruled that a pre-enforcement challenge to a state law requiring post-collision toxicology screens of railroad crews based on reasonable grounds, rather than probable cause, to believe intoxication was involved was not ripe. Specifically, the panel held that the plaintiffs' Fourth Amendment challenges to the law rested on "a mountain of conjecture and speculation" beginning with a train collision in Louisiana and ending with law enforcement ordering toxicology testing of the crew without actual probable cause. 205 F.3d at 858. The court also noted that the law allowed crew members to refuse testing, with the only consequence being a report to the Department of Transportation, and thus found the challenge extremely premature in light

of the minimal harm to plaintiffs of withholding review versus the factual development required for a challenge. *Id.* at 859.

LCG maintains, however, that the court can make a sufficient determination of the legal rights between the parties and their permitting obligations based on the existing record. It points to *Regions Insurance, Inc. v. Ace Prop. & Cas. Ins. Co.*, where the Middle District of Louisiana considered a ripeness challenge to an insurer's request for a declaration of no liability for defense and indemnity claims brought by two other insurers based on the insured's execution of rejection forms for UM coverage with the first carrier. 80 F.Supp.3d 730 (M.D. La. 2015). The court rejected the challenge, finding that the action was ripe for review even though the plaintiff and one defendant were engaged in binding arbitration proceedings. Specifically, it recognized that though the outcome of arbitration was uncertain, requiring Regions to wait a potentially long time for the process to conclude and roll the dice on the outcome while also allowing defense and indemnity costs to rise represented too great a hardship. *Id.* at 735–36.

Here LCG has requested a broad, preemptive ruling of no liability. In support of its request it cites only the threat of suit from St. Martin Parish. As basis for this fear of suit, however, LCG cites statements by St. Martin Parish alleging "a clear danger of future flooding in St. Martin Parish as a result of LCG's spoil bank destruction project" and its belief that a lawsuit of some sort is needed to prevent such damage.[1] Doc. 16, ¶¶ 11–12. A ruling of no liability on the part of LCG, therefore, depends on an injury that has not yet

---

[1] LCG also references the modeling it used to justify a belief in the project's necessity and the failure of this data to convince St. Martin Parish. *Id.* at ¶¶ 13–14, 21.

occurred and whose likelihood (or lack thereof) cannot be sufficiently proven to justify judicial intervention. On the other hand, if St. Martin Parish chooses to file suit before any alleged effects from the spoil bank project are determined, a court can evaluate the legality of LCG's actions under the permitting process and the parish ordinance (as well as the constitutionality of that ordinance) with little more hardship to LCG than the effort it would expend seeking declaratory judgment in this court. As in *United Transport Union*, the action is especially premature in light of the minimal hardship to LCG of withholding judicial intervention at this stage. Accordingly, the court agrees that the expansive nature of the ruling sought by LCG renders the matter unripe and that the claims against the parish should be dismissed for lack of subject matter jurisdiction.

### III.
#### CONCLUSION

For the reasons stated above, the Motion to Dismiss for Lack of Jurisdiction [doc. 16] will be **GRANTED** and all claims against St. Martin Parish will be dismissed without prejudice for lack of subject matter jurisdiction. The Motion to Dismiss for Failure to State a Claim [doc. 16] and Motion for More Definite Statement [doc. 16] will be denied as moot. Claims against the United States remain before the court, pending further motion practice.

**THUS DONE AND SIGNED** in Chambers this 5th day of July, 2022.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**