UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT** | **CASE NO. 6:22-CV-01127** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **UNITED STATES OF AMERICA ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## MEMORANDUM ORDER

Before the court is a Motion to Reconsider, or alternatively, Motion for Certification for Appeal [doc. 30] filed by plaintiff Lafayette City-Parish Consolidated Government ("LCG"). The motions relate to the court's prior ruling [docs. 28, 29] granting the Motion to Dismiss for Lack of Jurisdiction [doc. 16] filed by defendant St. Martin Parish Government ("SMPG"). Also before the court is a Motion for Leave to File Second Amending and Supplemental Complaint [doc. 32] filed by LCG. All of the motions are opposed by SMPG.

### I.
### BACKGROUND

This suit arises from a flood mitigation project by LCG involving, among other things, reducing a spoil bank on the St. Martin Parish side of Vermilion Bayou to improve the flow of stormwater into and out of the Cypress Island Swamp and reduce flooding in Lafayette Parish. *See* doc. 8 (amended complaint), ¶¶ 3–19. LCG alleged that it began coordinating with SMPG on this project in 2020 but that SMPG opposed permitting by the

U.S. Army Corps of Engineers ("Corps") and passed Ordinance 14-71, which requires a permit by the parish council for "[a]ny development which includes the construction, alteration, or removal of any sort of levee or levee system," in order to block the project. St. Martin Par. Ord. 14-71 (No. 21-07-1327-OR, 7-6-2021).

Maintaining that Corps permitting was not required and that Ordinance 14-71 was unconstitutional, LCG executed the spoil bank project in February 2022. Doc. 8, ¶¶ 25, 30–31. The SMPG president allegedly responded with threats of litigation. *Id.* at ¶¶ 33–34. LCG then filed suit in the Fifteenth Judicial District Court, Lafayette Parish, Louisiana, against SMPG and the Corps, seeking a declaratory judgment on its compliance with all lawful regulations, rules, ordinances, and laws in the spoil bank project and that a Corps permit was not required. Doc. 1, att. 1. The United States, appearing on behalf of the Corps, removed the action to this court based on federal question jurisdiction, 28 U.S.C. § 1331. Doc. 1. St. Martin Parish filed a Motion to Dismiss or, in the alternative, Motion for More Definite Statement [doc. 5], and in response LCG amended its complaint. Doc. 8. The first Motion to Dismiss was then denied as moot. Doc. 25.

In the amended complaint LCG refined its allegations and sought a declaratory judgment that (1) it "has no liability to St. Martin Parish for any work associated with the spoil bank project," (2) Ordinance 14-71 is unconstitutional; (3) alternatively, LCG did not violate Ordinance 14-71; and (4) no Corps permit was required for the spoil bank project as executed in February 2022. Doc. 8, ¶¶ 35–39. SMPG again moved for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) or, in the alternative, a more definite statement under Rule 12(e). Doc. 16, att. 1. Over opposition from LCG, the court

granted the motion to dismiss for lack of jurisdiction. Docs. 28, 29. In so doing the court found that the claims against SMPG were not ripe because a declaration of no liability would depend on premature adjudication of LCG's tort liability for any future effects of the project in St. Martin Parish. Doc. 28. Immediately following that ruling, SMPG filed a "Petition for Mandatory Injunction" against LCG in the 16th Judicial District Court, St. Martin Parish, Louisiana. Doc. 30, att. 2. There it requests an order for LCG to restore, replace, and reconstruct the previously existing spoil bank, based on the alleged violation of Ordinance 14-71 as well as its belief that the spoil bank removal will significantly increase the likelihood of flooding in St. Martin Parish. *Id.*

LCG now moves this court for reconsideration of its dismissal of the suit, asserting that the court erred by (1) considering only one of LCG's claims against SMPG, (2) ruling that the claim was not ripe, (3) failing to remand the claim to state court rather than dismiss it, and/or (4) failing to allow LCG an opportunity to amend its complaint. Doc. 30, att. 1. Alternatively, it requests that the court's ruling be certified for immediate appeal. *Id.* LCG also moves for leave to amend the complaint a second time, in order to assuage the court's jurisdictional concerns by removing its declaratory request for no liability and because it maintains that SMPG's new suit "is further evidence that LCG's claims . . . are ripe and that this Honorable Court properly exercises subject matter jurisdiction." Doc. 32, att. 1, p. 3. SMPG likewise opposes this motion.

## II.
## LAW & APPLICATION

### A. Motion to Reconsider

#### 1. Legal Standard

Federal Rule of Civil Procedure 54(b) allows the court to reconsider an interlocutory order "for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 210–11 (5th Cir. 2010). An interlocutory order is one that "adjudicates fewer than all the claims . . . of all the parties," such as the order on the motion to dismiss at issue here. Fed. R. Civ. P. 54(b); *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990); *Thompson v. Betts*, 754 F.2d 1243, 1245 (5th Cir. 1985).

Although the rule grants the court broad discretion to reconsider, "this power is exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays." *United States v. Cytogel Pharma, LLC*, 2017 WL 3849317 (E.D. La. Mar. 28, 2017) (internal quotations omitted). Courts evaluate motions to reconsider under Rule 54(b) under a "less exacting" standards than those applied to final judgments under Rules 59(e) and 60(b) but still look to the latter rules for guidance. *In re Padco Pressure Control, LLC*, 2017 WL 161647, at *1 (W.D. La. Jan. 13, 2017) (collecting cases). To this end, the court should consider whether there are "manifest errors of law or fact upon which judgment is based[,]" whether "new evidence" is available, whether there is a need "to prevent manifest injustice," or whether there has been "an intervening change

in controlling law." *Id.* (quoting *HBM Interests, LLC v. Chesapeake La., LP*, 2013 WL 3893989 (W.D. La. Jul. 26, 2013)).

### 2. Application

LCG responded to SMPG's first Motion to Dismiss by filing an amended petition. In opposing SMPG's second Motion to Dismiss, LCG included in footnote a request for "opportunity to amend if the Court agrees with SMPG on any part of its Motion to Dismiss." Doc. 22, p. 16, n. 68. While the court finds no basis for vacating its ruling as to the prematurity of determining liability issues, it did overlook this statement.[1] Accordingly, it will **GRANT** the motion to reconsider and consider the request for leave to amend, analyzing the remaining claims under the arguments raised for dismissal under SMPG's prior Motion to Dismiss under Rule 12(b)(6).

## B. Motion for Leave to Amend

### 1. Legal Standard

The time for amending pleadings as a matter of course has passed. Accordingly, LCG may only amend its petition with leave of court or consent of the opposing party. Fed. R. Civ. P. 15(a)(2). While the court should "freely give leave [to amend] when justice so requires," it may deny the request for a "substantial reason" such as undue delay, undue prejudice, futility, and repeated failure to cure deficiencies. *Id.*; *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 367 (5th Cir. 2014). Futility alone provides a sufficient basis

---

[1] The court also rejects LCG's arguments that the claims ought to have been remanded to state court. While removed claims should generally be remanded rather than dismissed, this rule does not apply in cases of futility—such as here, where the court's determination of standing also meant that the state court would lack jurisdiction over the case. *Parsons v. Tex. Office of Atty. Gen.*, 2018 WL 5724462 (E.D. Tex. Aug. 8, 2018) (citing *Boaz Legacy, L.P. v. Roberts*, 628 F. App'x 318, 319 (5th Cir. 2016)).

for denying leave to amend and amended claims are futile if they would be subject to dismissal under Federal Rule of Civil Procedure 12(b)(6). *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014).

## 2. Application

The only changes between the first amended complaint and the proposed second amended complaint are that LCG has dropped its request for declaratory judgment on liability and added factual allegations relating to SMPG's Petition for Mandatory Injunction. Doc. 32, att. 3. In its prior Motion to Dismiss, however, SMPG also raised grounds for dismissing the remaining claims under Federal Rule of Civil Procedure 12(b)(6). Accordingly, the court will now apply these arguments to the second amended complaint to determine if futility serves as a basis for denying leave to amend.[2] The scope of a 12(b)(6) motion is limited to on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court can also consider documents referenced in and central to a party's claims, as well as matters of which it may take judicial notice. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir. 2008) (unpublished). Because certain attachments to SMPG's prior motion, namely an affidavit and email, fall outside this scope, the court will not consider them in determining futility.

---

[2] SMPG also opposes LCG's Motion for Leave to Amend on the grounds that the court has dismissed the claims and there is no jurisdictional basis for bringing SMPG back into the suit. The court's grant of the motion to reconsider, supra, however, brings SMPG back into the suit at least temporarily for the purposes of considering LCG's attempts to cure the defects justifying dismissal of the prior petition.

The remaining claims pertaining to SMPG seek a declaratory judgment that (1) Ordinance 14-71 is unconstitutional and (2) alternatively, LCG did not violate Ordinance 14-71. Doc. 32, att. 3. St. Martin Parish argues that LCG fails to state a claim on which relief can be granted because (1) LCG has judicially admitted to its violation of Ordinance 14-71 and therefore cannot obtain a declaratory judgment to the contrary, (2) a litigant with "unclean hands" cannot seek a declaratory judgment, and (3) LCG's allegations are devoid of facts that would show the ordinance is unconstitutional.

### a. Violation of Ordinance 14-71

SMPG argues that LCG has judicially admitted that it disregarded Ordinance 14-71 by not obtaining a permit before removing the spoil banks on the St. Martin Parish side of Vermilion Bayou. LCG denies in the first place that it violated Ordinance 14-71, though it maintains that it was unconstitutional and unenforceable. Instead, it argues that the ordinance "as plainly drafted" only applies to developments involving construction, alteration, or removal of a "levee or levee system" and not to the work it admittedly undertook without permit with respect to the spoil banks. Doc. 22, pp. 18–20.

The ordinance provides, in relevant part:

> Any development which includes the construction, alteration, or removal of any sort of levee or levee system as defined in this chapter, including, but not limited to, section 14-2, shall require a permit issued and approved by the floodplain administrator and specifically approved by majority vote of the St. Martin Parish Council. Upon request of the floodplain administrator or parish president, the request for such a permit shall be accompanied by an engineering study which details the impact of the said development inclusive of hydrological and hydraulic analysis. In those instances where the development includes the removal of a levee or levee system, the original purpose for the construction of the said levee or levee system shall be irrelevant.

St. Martin Par. Ord. 14-71 (No. 21-07-1327-OR, 7-6-2021). The chapter defines "development" as "any manmade change to improved and unimproved real estate, including, but not limited to, buildings or other structures, mining, dredging, filling, grading, paving, excavation or drilling operations or storage of equipment or materials." *Id.* at Ord. 14-2 (Ord. No. 19-12-1282-OR, 12-3-2019; Ord. No. 21-07-1327-OR, 7-6-2021). Meanwhile, a "levee" is "a manmade structure of any nature, earthen or otherwise, along any water body that contains, controls, diverts, detains, retains, or which aids in the containment, control, or diversion of the flow of water on or across any real estate" and a "levee system" is a flood protection system consisting of "a levee, or levees, and associated structures . . . ." *Id.* Finally, a "structure" is defined, for floodplain management purposes, as "a walled and roofed building . . . that is principally above ground[.]" *Id.*

LCG maintains that its work for the spoil bank project falls outside of the scope of 14-71 because it did not involve the "construction, alteration, or removal" of any "structure" that could be defined as a walled and roofed building. The definitions section also provides, however, that the defined words "shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning." St. Martin Par. Ord. 14-2. The narrow definition of structure under the Flood Prevention Chapter appears to apply to floodproofing provisions relating to the protection of buildings and to contradict the word's usage under the definition of "levee," which may include a manmade earthen structure functioning as levees typically function alongside bodies of water.

According to LCG's allegations, the spoil bank is a structure made up of sediment/dredging material left after the U.S. Army Corps of Engineers dredged Vermilion Bayou in the 1950s. Doc. 32, att. 3, ¶¶ 3–4. This bank allegedly "partially impeded the natural flow of water from the Vermilion Bayou into and out of the Cypress Island Swamp." *Id.* Beginning in 2020 LCG attempted to negotiate with SMPG for its cooperation in a project that would include the removal of this spoil bank, but SMPG refused. *Id.* at ¶¶ 12–25. After SMPG enacted Ordinance 14-71, LCG "finally executed this spoil bank project" without permission from SMPG. *Id.* at ¶¶ 26–31. Accordingly, the allegations show no basis for finding that LCG did not violate the ordinance and this claim is futile.

    **b. Unclean hands**

SMPG next asserts that LCG is barred from seeking equitable relief, including the requested declaratory judgment on the constitutionality of Ordinance 14-71, under the doctrine of unclean hands. This doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Healthpoint, Ltd. v. Ethex Corp.*, 273 F.Supp.2d 817, 847 (W.D. Tex. 2001) (quoting *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 814 (1945)). As LCG points out, however, the Fifth Circuit has rejected this argument with respect to constitutional challenges. *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 93 (5th Cir. 1992). There the court held that the fact that a plaintiff had violated a city obscenity code should not bar him from attempting to challenge the constitutionality of that provision, because nothing in the relief granted prevented the city from enforcing its laws, and further quoted the district

court's opinion that the city's "attempt to exalt the Dallas City Code of the United States Constitution is fatuous." *Id.* Likewise, LCG's legal challenge to the constitutionality of Ordinance 14-71 does not prevent St. Martin Parish from enforcing its flood prevention regulations within the bounds of the Constitution. The argument thus shows no basis for rejecting the remaining claim against this defendant.

### c. Constitutional challenge

Finally, LCG asserts that Ordinance 14-71 is unconstitutional "as a law specifically targeting Lafayette Parish and/or a prohibited special law," because it "violates the commerce clause," and because it is "unconstitutionally overbroad and vague." Doc. 32, att. 3, ¶ 36. SMPG asserts that these conclusory allegations are insufficient to show a Commerce Clause violation in particular, and the court will also separately analyze the other constitutionality allegations for futility.

LCG has first alleged that the ordinance is unconstitutional because it specifically targeted LCG's plans with respect to the spoil banks. Prohibitions on "special laws" appear in most state constitutions. Shambie Singer, 2 Sutherland Statutory Construction § 40:1 (8th ed.). Only some states apply these provisions to local governments, however. 82 C.J.S. Statutes § 200. The relevant provision under the Louisiana Constitution, Article III, § 12; applies only to the state legislature and not to legislation by political subdivisions such as cities or parishes. *Arshad v. City of Kenner*, 95 So.3d 477, 483–84 (La. 2012). Accordingly, this challenge has no merit.

As it relates to the vagueness/overbreadth challenge, the court can also find no basis for setting aside the statute. A law is only considered unconstitutionally "vague" if persons

"of common intelligence must necessarily guess at its meaning and differ as to its application . . . ." *Carico Investments, Inc. v. Tex. Alcoholic Beverage Comm'n*, 439 F.Supp.2d 733, 746 (S.D. Tex. 2006) (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)). Additionally, the Constitution tolerates a greater degree of vagueness for economic regulations and laws entailing only civil penalties as opposed to criminal statutes and laws otherwise threatening to inhibit the exercise of constitutional rights. *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 551–52 (5th Cir. 2008). Here the plain meaning of the ordinance's terms are easily understood: a prohibition on interference without permit into "any sort of levee or levee system" in St. Martin Parish. While LCG may continue to claim ignorance of whether the spoil banks qualified as levees, that issue does not appear so vague to this court as to render the ordinance unconstitutional.

Meanwhile, there are two tests for determining whether a statute is facially unconstitutional on overbreadth grounds: one for challenges that involve First Amendment claims and another for those that do not. *Hersh ex rel. United States v. Mukasey*, 553 F.3d 743, 762 n. 23 (5th Cir. 2008). Under the latter, a statute is overbroad if it is "unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Repub. Party*, 552 U.S. 442, 449 (2008). Accordingly, a plaintiff can only succeed by establishing that no set of circumstances exists under which the law would be valid. LCG fails to make any such showing, particularly in light of the ways in which its Commerce Clause challenge falls short *infra*, and so this claim is also futile.

As for the Commerce Clause, LCG provides no allegations to support this claim. In its opposition to SMPG's second Motion to Dismiss, however, it asserted that the violation

relates to the dormant Commerce Clause. The Commerce Clause provides that "Congress shall have Power . . . To regulate Commerce . . . among the several States . . . ." U.S. Const., Art. I, § 8, cl. 3. From this language arises a judicial creation known as the dormant Commerce Clause, under which "states lack the power to impede interstate commerce with their own regulations." *Dickerson v. Bailey*, 336 F.3d 388, 395 (5th Cir. 2003). The dormant Commerce Clause may be applied to local governments as well. *E.g.*, *Ft. Gratiot Sanitary Landfill, Inc. v. Michigan Dep't of Nat. Res.*, 504 U.S. 353 (1992).

Courts apply a two-tiered analysis to determine whether a statute violates the dormant Commerce Clause: first, the court asks whether the law facially discriminates between in-state and out-of-state economic interests. *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338 (2007). "In this context, discrimination simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Id.* (internal quotations omitted). Laws that discriminate in this manner are almost *per se* invalid, unless the state can show that it has no other means to advance a legitimate local purpose. *Id.* at 338–39.

A law that does not overtly discriminate between in-state and out-of-state economic interests may still violate the dormant Commerce Clause if it unduly burdens interstate commerce. *Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 99 (1994). To this end the court applies a balancing test and will only invalidate the law if its incidental burdens on interstate commerce are "clearly excessive in relation to the putative local benefits." *Id.* (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)).

Ordinance 14-71 does not discriminate between in-state and out-of-state economic interests. While LCG argues in its opposition that flooding is a "regional" issue and that St. Martin Parish cannot isolate itself from the effects, this position likewise fails to show any burden on **interstate** economic interests. Intrastate restrictions only violate the dormant Commerce Clause to the extent they place an economic burden on out-of-state concerns. *Ben Oehrleins and Sons and Daughters, Inc. v. Hennepin Cnty.*, 115 F.3d 1372, 1385–86 (8th Cir. 1997); *see also On the Green Apartments LLC v. City of Tacoma*, 241 F.3d 1235, 1242 (9th Cir. 2001) ("Where . . . the plaintiff alleges only an intrastate burden, a court cannot manufacture an interstate burden to implicate the Commerce Clause.") LCG's main concern as evidenced by the pleadings, and perhaps its sole ability to obtain standing, hinges on the extent to which Ordinance 14-71 is protectionist at the local level. Accordingly, it has not pled a viable Commerce Clause violation and LCG's Motion for Leave to Amend is subject to denial on the basis of futility. The court will, however, allow plaintiff one final attempt at curing the deficiencies identified above in its claims.

## III.
### CONCLUSION

For the reasons stated above, **IT IS ORDERED** that the Motion to Reconsider [doc. 30] be **GRANTED**, that the Motion for Certification [*id.*] be **DENIED AS MOOT**, that the Motion for Leave to Amend [doc. 32] be **DENIED**, and that plaintiff be granted **14 days** from the date of this order to file a final Motion for Leave to Amend and attempt to cure the deficiencies in its claims against SMPG. SMPG will then have the opportunity to oppose this motion and address the merits of the underlying claims.

**THUS DONE AND SIGNED** in Chambers this 18th day of August, 2022.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE