# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| LAFAYETTE CITY-PARISH CONSOL. | Civil Action No. 22-1127 |
| versus | Judge Robert R. Summerhays |
| GOVERNMENT OF ST. MARTIN PARISH, ET AL. | Magistrate Judge Carol B Whitehurst |

## REPORT AND RECOMMENDATION

Before the undersigned, on referral from the district judge, are two motions filed by the United States of America: (1) Motion to Dismiss for Lack of Jurisdiction [Doc. 33] and (2) Motion to Dismiss Plaintiff's Fourth Amended Complaint [Doc. 64]. Both motions are opposed by plaintiff, the Lafayette City-Parish Consolidated Government ("LCG") [Docs. 51 & 75, respectively].

## FACTUAL AND PROCEDURAL BACKGROUND

The lawsuit arises from a flood mitigation project by LCG involving, among other things, reducing a spoil bank on the St. Martin Parish side of Vermilion Bayou. LCG argues this would improve the flow of stormwater into and out of the Cypress Island Swamp and reduce flooding in Lafayette Parish. *See* Fourth Amended Complaint, Doc. 59 at ¶¶ 3–33. LCG alleged that it began coordinating with SMPG on this project in 2020 but that SMPG opposed permitting by the U.S. Army Corps of Engineers ("Corps") and passed Ordinance 14-71, which

1

amended/revised Chapter 14 of the St. Martin Parish Code of Ordinances, by enacting Ordinance 14-71 and revising Ordinance 14-2 to change the definition of "levee." Ordinance 14-71 now requires a permit by the parish council for "[a]ny development which includes the construction, alteration, or removal of any sort of levee or levee system." St. Martin Par. Ord. 14-71 (No. 21-07-1327-OR, 7-6-2021). Maintaining that Corps permitting was not required and that Ordinance 14-71 was unconstitutional, LCG executed the spoil bank project in February 2022 by essentially removing the spoil bank in St. Martin Parish without notifying St. Martin Parish. Doc. 59, ¶32. The SMPG president allegedly responded with threats of litigation. *Id.* at ¶¶35-36. LCG then filed suit in the Fifteenth Judicial District Court, Lafayette Parish, Louisiana against SMPG and the Corps, seeking a declaratory judgment that it had complied with all lawful regulations, rules, ordinances, and laws in the spoil bank project and that a Corps permit was not required. *Id.* at ¶37. The United States, appearing on behalf of the Corps, removed the action to this court based on federal question jurisdiction. [Rec. Doc. 1].

In the Fourth Amended Complaint, LCG seeks a declaration that Phase I of the spoil bank project did not fall within the jurisdiction of the Corps and did not require a permit from the Corps. After LCG completed Phase 1 of the spoil bank project, the Corps issued a Cease-and-Desist Order (hereinafter sometimes referred to as the "Order") to Lafayette Parish. This Order directed LCG to cease work on

2

the property in St. Martin Parish (and the property in Lafayette Parish reserved for Phase 2) or face legal action, asserted Corps regulatory authority over the property, and contended the work violated the Clean Water Act and Rivers and Harbors Act. Specifically, the character of the work that was found to be violative was "[u]nauthorized deposition and redistribution of dredged and fill material in waters of the U.S., and unauthorized work in navigable waters of the U.S." In the Order, the Corps states:

> The work described above was performed in waters of the United States and is therefore subject to Department of the Army (DA) regulatory authority. You are directed not to perform or allow any further unauthorized work at this site until proper authorization has been granted. Failure to abide by this Cease and Desist Order will result in appropriate legal action.
>
> You are advised that violation of the RHA and/or CWA may subject you to administrative and/or judicial action. Legal action could result in a fine and/or a court order to restore the suite to preproject conditions. A DA permit application cannot be accepted until all legal issues are resolved. To assist us in our evaluation, you are requested to submit a letter of comments. Specifically, your comments should address why you failed to obtain a DA permit prior to conducting this unauthorized work in light of the fact that you had a permit application for this work and withdrew it, had a wetland delineation showing where wetlands and non-wetlands water occurred on the properties, understand that permits are required for activities in waters of the U.S., and have extensive permitting history with the Corps.
>
> [. . .]

> If we do not receive a written response from you within 20 days from the date shown above, we will proceed with appropriate action for resolution of the legal issues based on the information in our files.[1]

In its brief, LCG responds that it completed Phase 1 of the spoil bank project in St. Martin Parish, only in upland areas, and not in any wetlands or navigable waters, and that, "to [its] knowledge, neither it nor its contractors discharged any pollutants into waters of the United States," nor did it obstruct or alter any navigable water of the United States. LCG alleges that the Cease-and-Desist Order constitutes final agency action, and that because it was arbitrary and capricious, it must be set aside. Finally, LCG alleges that, in issuing the Cease-and-Desist Order, the USA waived sovereign immunity

In the instant motion, the USA seeks dismissal of LCG's claims for lack of subject matter jurisdiction on grounds the Cease-and-Desist Order was not a final agency action.

## LAW AND ANALYSIS

**A. Legal Standard**

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint

---

[1] A copy of the Cease-and-Desist Order is attached to LCG's opposition to the government's Motion to Dismiss, Doc. 51.

supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *citing Barrera–Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir.1996). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel v. United States,* 899 F.Supp. 305, 307 (E.D.Tex.1995). Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir.1980). In evaluating jurisdiction, the Court must resolve disputed facts without giving a presumption of truthfulness to the plaintiff's allegations. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981).

    **B. Analysis**

        **1. Motion to Dismiss for Lack of Jurisdiction [Doc. 33]**

In this motion, the USA moves to dismiss LCG's First Amended Complaint filed May 19, 2022 [Doc. 8], which was re-filed on May 20, 2022 [Doc. 11]. Inasmuch as the First Amended Complaint is no longer operative in this matter, LCG having filed several amended complaints since the filing of Document 33, IT IS RECOMMENDED that the Motion to Dismiss for Lack of Jurisdiction [Doc. 33] be DENIED AS MOOT.

### 2. Motion to Dismiss Plaintiff's Fourth Amended Complaint [Doc. 64]

In this lawsuit, LCG seeks a declaration from the Court that its spoil bank project is not within the jurisdiction of the Corps and, therefore, did not require a permit. LCG acknowledges that it had applied to the Corps for a permit for the original spoil bank project (Doc. 59 at ¶17), but that when it revised the project plans, LCG unilaterally determined that a permit was not required. (*Id.* ¶ 30).

The parties agree that the Rivers and Harbors Act ("RHA"), 33 U.S.C. 401 *et seq.* and the Clean Water Act ("CWA"), 33 U.S.C. 1251 *et seq.*, are implicated by the actions of LCG in removing the spoil bank. While LCG acknowledges that the RHA and CWA regulate the waters of the United States, it contends that the spoil bank project as executed does not fall within Corps jurisdiction (*Id.* ¶115). In the instant motion to dismiss, the USA seeks dismissal of LCG's claims on grounds this Court lacks subject matter jurisdiction over them, because (1) the USA has broad authority to regulate the waters of the United States pursuant to the RHA and the CWA, including the issuance of cease-and-desist orders for unauthorized activities; and (2) the cease-and-desist order that was issued was not a final agency action.

### a. River and Harbors Act

Section 10 of the River and Harbors Act prohibits the unauthorized obstruction or alteration of any navigable water of the United States, as follows:

> The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army; **and it shall not be lawful to excavate or fill, or in any manner to alter or modify the course, location, condition, or capacity of, any port, roadstead, haven, harbor, canal, lake, harbor or refuge, or enclosure within the limits of any breakwater, or of the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army prior to beginning the same**.

33 U.S.C. §403 (West) (emphasis added). Under the RHA, proposed activities that would impact navigable waters require Section 10 permits; the application process for obtaining permits is found in 33 C.F.R. 322.1.

### b. Clean Water Act

The objective of the CWA is the restoration and maintenance of the "chemical, physical and biological integrity of [the] Nation's waters." 33 U.S.C. 1251(a). Section 301 of the CWA makes it unlawful for any person to discharge any pollutant – including dredged or fill material -- into waters of the United States without authorization. *See, e.g., Rapanos v. U.S.*, 547 U.S. 715, 723, 126 S.Ct. 2208, 2215, 165 L.Ed.2d (2006). Significantly, the Corps is authorized to regulate the discharge of dredged and fill materials into waters of the United States through

the issuance of permits. 33 U.S.C. 1344. The process for applying for CWA permits is set forth in 33 C.F.R. 323.

### c. Enforcement of the RHA and CWA

Both the Corps and the Environmental Protection Agency ("EPA) share authority to enforce the CWA. *See U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 595, 136 S. Ct. 1807, 1812, 195 L. Ed. 2d 77 (2016), *citing* 33 U.S.C. §§1319, 1344(s); 33 CFR pt. 331, App. C. With respect to the CWA specifically, because it can be difficult to determine whether a particular parcel of property contains "waters of the United States," the U.S. Army Corps of Engineers will issue to property owners an "approved jurisdictional determination" ("AJD") stating the agency's definitive view on the matter. *See* 33 CFR § 331.2 and pt. 331, App. C (2015). The Supreme Court has held that these jurisdictional determinations are final agency actions that are judicially reviewable under the Administrative Procedure Act, 5 U.S.C. §704. *See, e.g., U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 593, 136 S. Ct. 1807, 1811, 195 L. Ed. 2d 77 (2016) ("[b]ecause "legal consequences . . . flow" from approved JDs, they constitute final agency action."). *See also* 33 C.F.R. 331.2.[2] However, under the

---

[2] 33 C.F.R. 331.2 states: "Approved jurisdictional determination means a Corps document stating the presence or absence of waters of the United States on a parcel or a written statement and map identifying the limits of waters of the United States on a parcel. Approved JDs are clearly designated appealable actions and will include a basis of JD with the document."

umbrella of authority granted to the Corps and the EPA, a Preliminary Jurisdictional Determination is merely advisable and is not appealable.[3] *Hawkes Co.*, 578 U.S. at 599.

When a party does not obtain a permit for activities which violate the CWA, it is subject to the enforcement procedures of the CWA. For unpermitted, ongoing discharges of fill material into waters of the United States, the Corps may give notice of the violation in the form of a "cease-and-desist order prohibiting any further work pending resolution of the violation…" 33 C.F.R. §326.3(c)(1). According to the regulations, if the violation involves a project that is not complete, the Corps should "issue a cease-and-desist order prohibiting any further work pending resolution of the violation" in accordance with the procedures contained in the regulations." *See* 33 C.F.R. 326.3(c)(1). If the violation involves a completed project, a Notice of Violation should be provided, and "a cease-and-desist order should not be necessary." 33 C.F.R. 326.3(c)(2). Thus, for unpermitted, ongoing violations, the Corps has a range of enforcement options, including requiring corrective action, issuing an "after the fact" permit,

---

[3] "Preliminary JDs are written indications that there may be waters of the United States on a parcel or indications of the approximate location(s) of waters of the United States on a parcel. Preliminary JDs are advisory in nature and may not be appealed. Preliminary JDs include compliance orders that have an implicit JD, but no approved JD." 33 C.F.R. § 331.2.

recommending that the Department of Justice pursue a civil or criminal action, or taking no action.

Turning to the issues presented by the instant motion, LCG bears the burden of establishing this Court's jurisdiction by affirmatively alleging facts conferring jurisdiction in its complaint. In its Fourth Amended Complaint, LCG alleges that the Cease-and-Desist Order issued by the Corps contains an "implicit jurisdictional determination" and constitutes a final agency action by the Corps. Therefore, LCG argues that the USA has waived sovereign immunity, and that this Court has subject matter jurisdiction over LCG's declaratory judgement action against the USA, because the Cease-and-Desist Order issued by the Corps contains an "implicit jurisdictional determination" and constitutes a final, appealable agency action by the Corps

In the instant motion, however, the government argues that, because the project in question was an ongoing project and was not complete, the Order sent by the Corps to LCG was a pre-enforcement action, and that neither the CWA nor RHA provide for judicial review of pre-enforcement cease-and-desist orders.

Thus, the question before the Court is whether the Cease-and-Desist Order was a final agency action that is appealable. After review of the record, the undersigned finds that the Cease-and-Desist Order was not a final agency action, and this Court therefore lacks subject matter jurisdiction over this matter.

LCG relies principally on two cases -- *Sackett v. EPA*, 566 U.S. 120, 132 S. Ct. 1367, 182 L. Ed. 2d 367 (2012) and *Lewis v. United States*, 483 F.Supp.3d 382 (M.D. La. Aug. 17, 2018). -- in arguing that the cease-and-desist Order in this action is a final agency order. In *Sackett*, the plaintiffs challenged an EPA administrative compliance order under the CWA. The Order at issue -- which contained Findings and Conclusions – asserted that the Sacketts' property was subject to the Act, and that the plaintiffs had violated its provisions by placing fill material on the property in question. The plaintiffs were ordered to immediately restore the property pursuant to an EPA work plan and they were denied a hearing when they requested one. Thus, the Court concluded that the compliance order marked the "consummation" of the agency's decision-making process, from which the plaintiffs could appeal. *Sackett*, 566 U.S. at 127. A review of the Order in this case, however, shows that the Order contains no findings and conclusions, suggesting that the Order is not the "consummation" of the Corps' decision-making process.

In *Lewis v. United States*, 483 F.Supp.3d 382 (M.D. La. Aug. 17, 2018), the plaintiffs owned property in Livingston Parish, Louisiana and wished to install above and below ground utilities, including a water tower and water lines to serve both existing and future uses. 483 F. Supp. 3d at 387-88. The Corps responded with a preliminary jurisdictional determination stating that the property "may be"

11

subject to the Corps' jurisdiction. Plaintiffs began the work without a permit and thereafter, the Corps sent Garry Lewis a letter stating that the Corps had reason to believe that Lewis had deposited fill material into a wetland and "advis[ing]" him to cease and desist his activity "pending a resolution." *Id.* at 388. The letter requested that Lewis respond with a "letter of comments" explaining why work was performed without a permit. The letter went on to state that the Corps would determine an appropriate course of action based upon his response and "any available information," and that potential resolutions included restoration of the affected area, issuance of an after-the-fact permit, or legal action. *Id.* The letter further stated that, if no response was received within 30 days, the Corps would proceed with appropriate action based on the information in its files. *Id.*

Two months later, the Corps issued to Garry Lewis a cease-and-desist order for deposition of fill material into a wetland. The Order directed Lewis to stop performing work absent proper authorization and stated that: (1) Lewis had performed work "in waters of the United States" subject to the Corps' regulatory authority; (2) failure to abide by the cease-and-desist order would result in "appropriate legal action;" (3) judicial proceedings were "not warranted in this case at this time;" (4) acceptance of an after-the-fact permit application for the work conducted would likely not result in additional adverse impacts to wetlands; and (5) an after-the-fact permit application should be submitted within 30 days or

the Corps would reconsider its decision not to seek judicial relief. *Id.* Several months later, the plaintiffs again requested an approved jurisdictional determination "for purposes of appeal," but they did not get one. The plaintiffs filed suit, seeking a declaration that the land at issue was not subject to the Corps' regulatory jurisdiction. *Id.* at 388–89.

The defendants argued that the cease-and-desist order was merely a preliminary step in enforcement, designed to "provide notice to an alleged ongoing violator," but the district court disagreed, finding that, while the Order may have left open certain remedial questions, it also strongly suggested that the Corps had "asserted its final position" on several facts underpinning its actions, including the presence of jurisdiction and the existence of a violation. *Id.* at 399. Thus, the court held that the plaintiffs made a plausible showing of the existence of a final order, and that the court, therefore, had jurisdiction over the action.

*Lewis* differs from the instant case in several respects. In *Lewis*, the Corps sent the plaintiffs two letters. The first letter in *Lewis* is similar to the Order at issue in this case, in that it directed the plaintiffs to stop the work; requested that the plaintiffs respond with a "letter of comments" explaining why work was performed without a permit; and indicated that, if no response was received, the Corps would determine an appropriate course of action based upon the information it had. In second letter in *Lewis* – which was sent only after no response was

received to the first letter -- the Corps took the position that it had regulatory authority over the work that had been performed and further ordered that the plaintiffs submit an after-the-fact permit application. While the Order in this case also suggests that work on the spoil bank project could not proceed without an application, the Order in this case – unlike the second letter in *Lewis* -- did not ask for comment and did not equivocate on the issue of the Corps' jurisdiction over the property.

The undersigned finds that the analysis in *Spring Branch Wildlife Pres. v. United States Env't Prot. Agency*, 2021 WL 6503917, at *1 (S.D. Tex. Sept. 17, 2021), *aff'd*, 2022 WL 9914735 (5th Cir. Oct. 17, 2022) is much more akin to a proper analysis of the instant case. In *Spring Branch*, plaintiff Spring Branch wished to begin a construction project on its property, located on a tract of land located along the Bluewater Highway in Texas, to create a commercial and recreational boating facility. This tract of land qualified as wetlands. *Spring Branch*, 2021 WL 6503917 at *1. Before beginning the work, Spring Branch sent a pre-construction notice (PCN) to the Corps, describing its plans and asserting its right to do the work under three particular "Nationwide Permits" ("NWP") under the CWA. *Id.* The Corps responded that the project could not be verified under the NWPs and instructed Spring Branch to apply for an individual permit. Instead of applying for an individual permit, Spring Branch proceeded without one. *Id.* In

September 2019, the Corps learned that fill material from Spring Branch's project had been discharged into wetlands, and Spring Branch received a Notification of Violations ("NOV") from the Corps as well as notice that the Corps had referred the matter to the EPA for possible enforcement. *Id.* Spring Branch also received two letters from the EPA -- one noting the referral from the Corps and the other outlining possible enforcement options and recommending "no further work in wetlands, streams or channels at the site." *Id.*

Spring Branch filed suit in federal district court in Galveston, Texas, seeking a declaration that the Corps had no regulatory jurisdiction under the CWA over the waters on their tracts, as well as a declaration that it could proceed with its construction project under the NWPs. *Id.* In so alleging, Spring Branch argued that the Corps' refusal to verify Spring Branch's project under the NWPs, the Corps' NOVs, and the cease-and-desist letters were all final agency actions. *Id.*

The court disagreed, concluding that a plain-language reading of the notifications and orders showed they were all intended as intermediate actions, not final agency decisions. First, the court noted that in the Corps' letters denying verification, the Corps stated that "to receive authorization for the proposed project, [Spring Branch] must re-apply under an individual permit." *Id.* at *2. The Court characterized this communication as "interlocutory," and not the "consummation" of the decision-making process as required by the first prong of

15

*Bennett. Id.* Similarly, the court held that the NOVs were also intermediate rather than final agency actions, because in each of them, the Corps "advise[d]" that no other work or discharge occur that may fill in or affect any aquatic site "until this matter is resolved." *Id.* Finally, in the EPA's warning letters to Spring Branch, the court noted that the EPA identified a threshold allegation and outlined a range of possible enforcement options but stopped short of committing itself to any particular action. *Id.*

Similarly, in the instant case, the Corps advised that there were "apparent violations" of the RHA and CWA and warned LCG "not to perform or allow any further unauthorized work at this site until proper authorization has been granted." The Corps further stated that a permit application could not be accepted until all legal issues were resolved, and it invited LCG to submit explanations for its actions. It is clear from a plain reading of the Order in this case that the Order is "interlocutory" and not the "consummation" of the decision-making process. Indeed, the Corps indicates that there is an "apparent" violation and seeks clarification from LCG regarding the spoil bank project. Finally, in its Order, the Corps indicates that if it does not receive a written response from LCG within 20 days, it "*will proceed* with appropriate action for resolution of the legal issues based on the information in our files," thereby indicating that no final resolution

has been made, and will not be made, until the receipt of information from LCG or the passage of 20 days.

Thus, after a review of the record in this matter and the governing jurisprudence, the undersigned concludes that the cease-and-desist Order in this case was not a final agency action. As such, the Order was not appealable, and this Court lacks subject matter jurisdiction over LCG's claims against the government.

Consequently,

**IT IS RECOMMENDED** that the (1) Motion to Dismiss for Lack of Jurisdiction [Doc. 33] be DENIED AS MOOT.

**IT IS FURTHER RECOMMENDED** that the Motion to Dismiss Plaintiff's Fourth Amended Complaint [Doc. 64] be GRANTED, as this Court lacks subject matter jurisdiction over LCG's claims against the United States, and that LCG's claims against the United States be DENIED AND DISMISSED WITHOUT PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** this 11th day of August, 2023 at Lafayette, Louisiana.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE