**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT** | **CASE NO. 6:22-CV-01127** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **UNITED STATES OF AMERICA ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## MEMORANDUM RULING

The present matters before the Court are the following motions: (1) the United States' Motion to Dismiss Plaintiff's First Amended Complaint [ECF No. 33]; (2) the United States' Motion to Dismiss Plaintiff's Fourth Amended Complaint [ECF No. 64]; and (3) St. Martin Parish Government's ("SMPG") Rule 12(b)(6) Motion to Dismiss Fourth Amended Complaint [ECF No. 70]. The Magistrate Judge issued a Report and Recommendation ("R&R") addressing the United States' motions [ECF No. 89], and a separate R&R addressing the SMPG motion [ECF No. 84]. The Lafayette City-Parish Consolidated Government ("LCG") has objected to both R&Rs. After considering the parties' arguments and the relevant authorities, the Court rules on LCG's objections as follows.

### I.
### Factual Background

The Court adopts the Magistrate Judge's statement of the factual background of the case:

> The lawsuit arises from a flood mitigation project by LCG involving, among other things, reducing a spoil bank on the St. Martin Parish side of Vermilion Bayou. LCG argues this would improve the flow of stormwater into and out of the Cypress Island Swamp and reduce flooding in Lafayette Parish. See Fourth Amended Complaint, Doc. 59 at ¶¶ 3–33. LCG alleged that it began coordinating with SMPG on this project in 2020 but that SMPG opposed permitting by the U.S. Army Corps of Engineers ("Corps") and passed Ordinance 14-71, which amended/revised Chapter 14 of the St.

> Martin Parish Code of Ordinances, by enacting Ordinance 14-71 and revising Ordinance 14-2 to change the definition of "levee." Ordinance 14-71 now requires a permit by the parish council for "[a]ny development which includes the construction, alteration, or removal of any sort of levee or levee system." St. Martin Par. Ord. 14-71 (No. 21-07-1327-OR, 7-6-2021).
>
> Maintaining that Corps permitting was not required and that Ordinance 14-71 was unconstitutional, LCG executed the spoil bank project in February 2022 by essentially removing the spoil bank in St. Martin Parish without notifying St. Martin Parish. Doc. 59, ¶32. The SMPG president allegedly responded with threats of litigation. Id. at ¶¶35-36. LCG then filed suit in the Fifteenth Judicial District Court, Lafayette Parish, Louisiana against SMPG and the Corps, seeking a declaratory judgment that it had complied with all lawful regulations, rules, ordinances, and laws in the spoil bank project and that a Corps permit was not required. Id. at ¶37. The United States, appearing on behalf of the Corps, removed the action to this court based on federal question jurisdiction. [Rec. Doc. 1].[1]

## II.
## LAW AND ANALYSIS

### A. The United States' Motions to Dismiss.

In the Fourth Amended Complaint, LCG seeks a declaration that Phase I of the spoil bank project did not fall within the jurisdiction of the Corps and did not require a permit from the Corps. After LCG completed Phase 1 of the spoil bank project, the Corps issued a Cease-and-Desist Order (hereinafter sometimes referred to as the "Order") to Lafayette Parish.[2] This Order directed LCG to cease work on the property in St. Martin Parish, asserted Corps regulatory authority over the property, and stated that the project violated the Clean Water Act and Rivers and Harbors Act.[3] The Corp concluded that the work violated these provisions because it involved "[u]nauthorized

---

[1] ECF No. 84 at 2-3.

[2] A copy of the Cease-and-Desist Order is attached to LCG's opposition to the government's Motion to Dismiss, ECF No. 51.

[3] *Id.*

deposition and redistribution of dredged and fill material in waters of the U.S., and unauthorized work in navigable waters of the U.S."[4] In the Order, the Corps states:

> The work described above was performed in waters of the United States and is therefore subject to Department of the Army (DA) regulatory authority. You are directed not to perform or allow any further unauthorized work at this site until proper authorization has been granted. Failure to abide by this Cease and Desist Order will result in appropriate legal action. You are advised that violation of the RHA and/or CWA may subject you to administrative and/or judicial action. Legal action could result in a fine and/or a court order to restore the suite to preproject conditions. A DA permit application cannot be accepted until all legal issues are resolved. To assist us in our evaluation, you are requested to submit a letter of comments. Specifically, your comments should address why you failed to obtain a DA permit prior to conducting this unauthorized work in light of the fact that you had a permit application for this work and withdrew it, had a wetland delineation showing where wetlands and non-wetlands water occurred on the properties, understand that permits are required for activities in waters of the U.S., and have extensive permitting history with the Corps.
>
> [. . . ]
>
> If we do not receive a written response from you within 20 days from the date shown above, we will proceed with appropriate action for resolution of the legal issues based on the information in our files.[5]

LCG contends that it completed Phase 1 of the spoil bank project in St. Martin Parish only on upland areas—not on any wetlands or any navigable waters—and that, "to [its] knowledge, neither it nor its contractors discharged any pollutants into waters of the United States."[6] LCG further argued that its work did not obstruct or alter any navigable waters of the United States.[7] LCG alleges that the Corps' Cease-and-Desist Order is a final agency action, that it is therefore reviewable, and that it must be set aside because it is arbitrary and capricious. Finally, LCG alleges that the United States waived sovereign immunity in issuing the Cease-and-Desist Order. The United States argues that LCG's claims should be dismissed for lack of subject matter jurisdiction

---

[4] *Id.*
[5] *Id.*
[6] Fourth Amended Complaint, ECF No. 59, ¶ 115.
[7] *Id.*

on the ground that the Cease-and-Desist Order was not a final agency action. The Magistrate Judge agreed with the United States that the Cease-and-Desist Order was not a final agency action and, accordingly, recommends that LCG's claims against the United States be dismissed for lack of jurisdiction. LCG objects to the Magistrate Judge's conclusions and recommendations.

The Supreme Court has adopted a two-prong test to determine whether an agency action is final: (1) the action must mark the consummation of the agency's decision-making process—it must not be merely tentative or interlocutory in nature and (2) it must be an action by which rights or obligations have been determined or from which legal consequences will flow.[8] LCG argues that the record supports its position that the Cease-and-Desist Order was a final agency action. In this regard, LCG points to comments made by Brad Guarisco, the Deputy Chief of the Regulatory Division of the New Orleans District of the Corps in his email transmitting the Cease-and-Desist Order to LCG. Guarisco stated in the email that there were "confirmed violations" of the Clean Water Act and Rivers and Harbors Act.[9] LCG argues that these statements by Guarisco establish that the Corp had completed its investigation and that the Cease-and-Desist Order was thus a final agency action. LCG also argues that the Magistrate Judge failed to distinguish the present case from *Sackett v. EPA, et al.*[10]

First, as to the comments of Guarisco that the Corp had "confirmed violations" of the relevant statutes, these comments do not transform the Cease-and-Desist Order into a final agency action in light of the text of the Cease-and-Desist Order. The Magistrate Judge noted that this order prohibited LCG from performing any additional work on the project *until proper authorization had been granted.*[11] The order requested a response from LCG within twenty days and stated that

---

[8] *Bennett v. Spear*, 520 U.S. 154 (1997).
[9] ECF No. 16-5.
[10] 566 U.S. 120, 132 (2012).
[11] ECF No. 16-5.

the Corps "will proceed with appropriate action for resolution of the legal issues based on the information in our file" if it did not receive a response.[12] Regardless of Guarisco's reference to "confirmed violations," the Cease-and-Desist Order contemplates additional, future actions by both LCG and the Corps before any final action would be undertaken. In short, the Magistrate Judge did not err in concluding that the Cease-and-Desist Order was merely "interlocutory" and not the "consummation" of the Corps' actions with respect to LCG's spoil bank project.

With respect to the *Sackett* case, the Court agrees with the Magistrate Judge's analysis of that case—as well as her thorough analysis of the other case cited by LCG, *Lewis v. United States*.[13] In *Sackett*, the Supreme Court found that a compliance order issued to landowners represented final agency action. The order made findings and conclusions and required the landowners "immediately [to] undertake activities to restore the Site, in accordance with [an EPA-created] Restoration Work Plan."[14] The landowners sought a hearing from the EPA on the matter which was denied. The court held that the order was a final action in that it required the landowners to take certain actions and further that it marked the "consummation" of the agency's decision-making process.[15]

In the present case, the Cease-and-Desist Order stated that legal action could occur in the future and further sought comments from LCG. By its very terms, the Cease-and-Desist Order did not consummate the Corp's decision-making process. Accordingly, the Magistrate Judge correctly concluded that *Sackett* does not support LCG's position in this case. In sum, the Cease-and-Desist Order was not a final agency action and the Court thus lacks subject matter jurisdiction over LCG's

---

[12] *Id.*
[13] 483 F.Supp.3d 382 (M.D. La. 2018).
[14] *Id.*, at p. 125.
[15] *Id.*

claims against the United States. Accordingly, LCG's objection to the R&R on the United States' motion to dismiss is OVERRULED.

**B. The SMPG Motion to Dismiss.**

The Court now turns to LCG's objections to the R&R addressing SMPG's motion to dismiss. As the Magistrate Judge notes in the R&R, the procedural posture of the claims against SMPG is convoluted, and the R&R attempts to "clean up" some of the loose ends of the case. Specifically, SMPG previously filed a Motion to Dismiss or, in the alternative, Motion for More Definite Statement[16] and, in response, LCG amended its complaint before the court ruled on the motion. As a result, SMPG's first Motion to Dismiss was denied as moot.[17] In its amended complaint, LCG refined its allegations and sought a declaratory judgment that (1) it "has no liability to St. Martin Parish for any work associated with the spoil bank project," (2) Ordinance 14-71 is unconstitutional; (3) alternatively, LCG did not violate Ordinance 14-71; and (4) no Corps permit was required for the spoil bank project as executed in February 2022.[18] SMPG again moved to dismiss LCG's claims or, alternatively, for a more definite statement under Rule 12(e).[19] The court granted SMPG's motion to dismiss on the grounds that the court lacked jurisdiction.[20] According to the court, LCG's claims against SMPG were not ripe because the declaratory judgment sought by LCG would turn on a premature adjudication of LCG's tort liability for any future effects of the project in St. Martin Parish.[21] LCG then filed a Motion for Reconsideration,[22] and a Motion to Amend the First Amended Complaint.[23] Before the court ruled

---

[16] ECF No. 5.
[17] ECF No. 25
[18] ECF No. 8, ¶¶35–39.
[19] ECF No. 16.
[20] ECF Nos. 28, 29. The orders were entered by the judge previously assigned to the case, Judge James Cain.
[21] ECF No. 28.
[22] ECF No. 30.
[23] ECF No. 32.

on LCG's first motion to amend, LCG filed a Motion for Leave to File a Third Amended Complaint.[24] On August 18, 2022, the court granted LCG's Motion to Reconsider, denied its Motion for Leave to Amend the First Amended Complaint, and ordered that LCG file a "final" Motion for Leave to Amend to attempt to cure the deficiencies in its claims against SMPG. On September 1, 2022, LCG filed its Motion for Leave to File a Fourth Amended Complaint, which was granted by the Magistrate Judge.[25] Several weeks later, the case was reassigned to the undersigned.[26]

In the R&R,[27] the Magistrate Judge interpreted Judge Cain's ruling "narrowly permit[ing] one final attempt by LCG to state a claim as follow:

> 1. The district judge dismissed LCG's claim that it did not violate Ordinance 14-71, finding that any claim to that effect is futile.
>
> 2. The district judge determined that the doctrine of unclean hands does not apply in this case to limit LCG's ability to challenge the constitutionality of Ordinance 14-71.
>
> 3. The district judge held that LCG, thus far, has not pled a viable Commerce Clause violation, however, the judge allowed LCG "one final attempt" to sufficiently plead a Commerce Clause violation, finding that LCG's "sole ability to obtain standing [] hinges on the extent to which Ordinance 14-71 is protectionist at the local level."[28]

Construing the allegations of LCG's live complaint and the parameters set by Judge Cain in his prior ruling, the Magistrate Judge concluded that (1) LCG lacks standing to assert a Commerce Clause claim; (2) that Judge Cain had previously dismissed LCG's claims against SMPG based on the constitutionality of Ordinance 14-71 is unconstitutional and, alternatively, that LCG did not violate Ordinance 14-71 without leave to amend; and (3) LCG could not assert its newly pled

[24] ECF No. 50.
[25] ECF No. 58.
[26] ECF No. 84, pp. 2-4.
[27] ECF No. 82.
[28] ECF No. 84, citing Memorandum Ruling, ECF No. 53, p. 13.

"Home Rule Charter" causes of action because Judge Cain's prior ruling limited LCG's ability to amend. LCG objects to the R&R.

**1. Standing.**

LCG first contends that the Magistrate Judge erred in raising the issue of standing *sua sponte*. Standing—*i.e.* "the power of the court to entertain the suit"—is the "threshold question in every federal case."[29] Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies."[30] Standing to sue is one of the doctrines developed in the caselaw to ensure federal courts do not exceed their limited authority over cases and controversies.[31] Standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong."[32] In addition to Article III standing "which enforces the Constitution's case-or-controversy requirement," courts have developed various "prudential" standing doctrines. This case involves the so-called "zone of interest" doctrine. Under this prudential standing doctrine, even when a plaintiff satisfies Article III's standing requirements, the plaintiff still must "establish that the injury he complains of (his aggrievement, or the adverse effect upon him) falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint."[33] This prudential standing doctrine applies claims under the dormant Commerce Clause.[34] The Magistrate Judge concluded that LCG's injury does not fall within the zone of interests protected by the dormant Commerce Clause.

---

[29] *Warth v. Seldin*, 422 U.S. 490, 498 (1975).
[30] *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting U.S. Const., Art. III, § 2).
[31] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337-38 (2016); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).
[32] *Spokeo* at 338.
[33] *Air Courier Conf. of Am. v. Postal Workers Union, AFL-CIO*, 498 U.S. 517, 523-24 (1991) (quoting *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 883 (1990)); *see also Bennett v. Spear*, 520 U.S. 154, 175–76 (1997).
[34] *National Solid Waste Management Ass 'n v. Pine Belt Regional Solid Waste Management Authority,* 389 F.3d 491 (5th Cir. 2004).

After conducting an independent review of the authorities and the record, the Court agrees with the Magistrate Judge's conclusion that LCG does not have standing to assert these claims.

LCG, however, argues that the "party presentation rule" prevents the Court from *sua sponte* raising standing in the present case because the parties had not previously raised standing.[35] The Court disagrees. In *Cibolo Waste, Inc. v. City of San Antonio*,[36] the Fifth Circuit discussed its discretion to address prudential standing issues even when not previously raised by the parties:

> Every party that comes before a federal court must establish that it has standing to pursue its claims .... ***Even if a plaintiff establishes Article III standing, we may consider whether prudential standing principles nonetheless_ counsel against hearing the plaintiff's claims. [FN 4]. The doctrine of prudential standing embodies 'judicially self-imposed limits on the exercise of federal jurisdiction." ...
>
> [FN 4] Although the City raises the issue of prudential standing for the first time on appeal, we retain discretion to consider its arguments because prudential standing, while not jurisdictional, nevertheless affects justiciability. *See Lewis v. Knutson*, 699 F.2d 230, 236 (5th Cir. 1983) ("[T]he constitutional limitation requiring an injury to satisfy the case or controversy requisite goes to the court's jurisdictional power to hear the case, while the prudential limitation goes to the court's administrative discretion to hear the case.")
>
> Thus, we are not required to address a party's prudential standing arguments when they were not raised below, *see Ensley v. Cody Res., Inc.*, 171 F.3d 315, 320 (5th Cir. 1999) refusing to consider prudential standing where the defendant failed to object in the trial court); *Bd of Miss. Levee Comm'rs v. EPA*, 674 F.3d 409,417-18 (5th Cir. 2012) (same), but have previously exercised our discretion to do so, see, e.g., *Pine Belt*, 389 F.3d at 498501. (*Id.*, at 473,474, and FN 4).

Exercising its discretion in *Cibolo*, the Fifth Circuit ruled on a prudential standing issue raised for the first time on appeal, concluding that "... Appellants lack standing to challenge the ordinance on the basis that it is facially discriminatory against out-of-state interests," and that "Appellants also cannot satisfy the second prong of the zone-of-interests test since they have not shown that the ordinance imposes an excessive burden on interstate commerce."[37] The court concluded that:

---

[35] *U.S. v. Sineneng-Smith*, 590 U.S. ___, 140 S.Ct. 1575, 206 L.Ed.2d 866 (2020).
[36] 718 F.3d 469 (5th Cir. 2013).
[37] *Id*, at 475.

> Appellants have failed to demonstrate that their alleged injury falls within the zone of interests protected by the dormant Commerce Clause. We AFFIRM the district court's dismissal of this case and hold that Appellants lack standing to pursue their claims.[38]

In *National Solid Waste Management Ass'n*,[39] Fifth Circuit raised the dormant Commerce Clause prudential standing issue *sua sponte*:

> Although defendants have not explicitly raised the issue of standing. we may consider it sua sponte. *Bauer v. Texas*, 341 F.3d 352,357 (5th Cir. 2003). Our standing analysis consists of constitutional and prudential components. *** The more difficult question is whether plaintiffs meet the prudential standing requirements. *** The key inquiry for prudential standing in this case is whether the injury of which plaintiffs complain is "arguably within the zone of interests to be protected ' by the dormant Commerce Clause, the "constitutional guarantee in question" here. . ..
>
> We must determine whether plaintiffs have standing to challenge the flow control ordinances as being facially discriminatory against out-of-state economic interests or whether they can merely challenge the ordinances as being excessively burdensome to interstate commerce.[40]

In sum, the relevant authorities support the Court's ability to consider prudential standing *sua sponte* even if the parties do not expressly raise the issue. Moreover, LCG cannot claim surprise by the Magistrate Judge's standing ruling. Before this case was re-assigned, Judge Cain expressly signaled that LCG had a standing problem with respect to its Commerce Clause claim, and even granted LCG leave to amend to cure that defect. Based upon the foregoing, the Court concludes that the Magistrate Judge correctly addressed standing and adopts her recommendation with respect to LCG's Commerce Clause claim. LCG's objection to that recommendation is overruled. Accordingly, LCG's Commerce Clause claim is dismissed.

---

[38] *Id.*
[39] 389 F.3d at 498-99.
[40] *Id.*

**2. Claims Addressing Ordinance 14-71.**

Next, LCG argues that the magistrate judge erred in dismissing its claims against SMPG based on the constitutionality of Ordinance 14-71. The Magistrate Judge recommends dismissal of those claims on the basis that Judge Cain had previously dismissed those claims as futile. LCG argues that Judge Cain's ruling did not expressly preclude it from amending and re-asserting those claims. The Court disagrees. A key exception to the generous standard for leave to amend under Rule 15 of the Federal Rules of Civil Procedure is where the amendment would be futile.[41] In determining futility, courts "apply the same standard of legal sufficiency as applies to Rule 12(b)(6)."[42] In other words, if an amendment would be subject to dismissal under a Rule 12(b)(6) motion, amendment would be futile, and the court should deny leave to amend. In his prior ruling, Judge Cain dismissed LCG's "Ordinance 14-71" claims and ruled that leave to amend those claims would be futile.[43] Accordingly, LCG's objection to the R&R on that issue is overruled.

**3. LCG's "Home Rule Charter" Claims.**

Finally, LCG argues that the Magistrate Judge erred in dismissing the newly pled "Home Rule Charter" claims that were asserted for the first time in the most recent amended complaint. The Magistrate Judge based her ruling on Judge Cain's prior ruling permitting LCG one final attempt to amend its Commerce Clause claims. The Magistrate Judge interpreted this ruling as prohibiting any other amendments. LCG argues that the ruling did not specifically prohibit the filing of new claims and, even if it had, LCG could still seek leave to file the amended complaint. LCG did, in fact, seek leave to file the amended complaint, which was granted.

---

[41] *See Stripling v. Jordan Production Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000).
[42] *Id.*
[43] *Priester v. J. P. Morgan Chase Bank, N.A.*, 708 F.3d 667, 678 (5th Cir. 2013).

Rule 15(a) of the Federal Rules of Civil Procedure provides that courts should "freely" grant leave to amend when "justice so requires." But this "generous standard is tempered by the necessary power of a district court to manage a case."[44] The Supreme Court identifies five considerations in determining whether to deny leave to amend a complaint, namely "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of the amendment...."[45] Absent such factors, "the leave sought should, as the rules require, be 'freely given.'"[46] In the instant case, the Court agrees with LCG that Judge Cain's prior order does not bar the newly-asserted Home Rule Charter claims in the amended complaint. While Judge Cain's prior ruling appears to limit the leave to amend to LCG's Commerce Clause claim, it does not contemplate or expressly foreclose the newly added Home Rule Charter claims. Accordingly, LCG's objection on that issue is sustained, and the Court will not adopt the Magistrate Judge's recommendation that these claims be stricken and/or dismissed.

**4. Remand under 28 U.S.C. § 1367(c).**

Given the Court's rulings on LCG's objections and the Magistrate Judge's recommendations, the only remaining claims are LCG's state law Home Rule Charter claims. The sole basis for jurisdiction over these state law claims is 28 U.S.C § 1367(a). Section 1367(c) provides that:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

---

[44] *Priester v. J. P. Morgan Chase Bank, N.A.*, 708 F.3d 667, 678 (5th Cir. 2013).
[45] *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).
[46] *Id.*

> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Section 1367(c)(3) thus allows a district court to "decline to exercise supplemental jurisdiction over" a state law claim if "the district court has dismissed all claims over which it has original jurisdiction . . . ."[47] Here, the Court has dismissed all of the claims over which it has original jurisdiction. Moreover, the remaining claims appear to involve novel issues of Louisiana law pertaining to SMPG's Home Rule Charter and the legality of its actions under that charter. Accordingly, the Court will exercise its discretion under Section 1367(c) to decline supplemental jurisdiction over these claims. Because this case was originally filed in state court and subsequently removed, the case is hereby remanded to the 15th Judicial District Court, Lafayette Parish, Louisiana.

## III.
## CONCLUSION

For the foregoing reasons, the Court:

(1) adopts the recommendations in the R&R [ECF No. 89] with respect United States' Motions to Dismiss [ECF Nos. 33 and 64]. LCG's claims against the United States are DISMISSED WITHOUT PREJUDICE;

(2) adopts the recommendations in the R&R [ECF No. 84] with respect to LCG's Commerce Clause claims. Those claims are DISMISSED;

(3) adopts the recommendations in the R&R [ECF No. 84] with respect to LCG's claims regarding Ordinance 14-71. Those claims are DISMISSED;

---

[47] 28 U.S.C. § 1367(c)(3).

(4) declines to adopt the recommendations in the R&R [ECF No. 84] with respect to LCG's claims regarding the Home Rule Charter; and

(5) the case is hereby REMANDED to the 15th Judicial District Court, Lafayette Parish, Louisiana.

THUS DONE in Chambers on this 27th day of September, 2023.

                                        ROBERT R. SUMMERHAYS
                                      UNITED STATES DISTRICT JUDGE